## WUEST *et al.* v. AMERICAN TOBACCO CO.

1. Where defendant, to justify a prosecution appearing to be malicious, pleads affirmatively the advice of counsel, he has the burden of proving this, and, failing to offer any evidence, submission to the jury of the question of probable cause is properly refused.

2. One is relieved from liability for malicious prosecution, by advice of counsel, only where he made a fair and full disclosure of all material facts known by him, and acted in good faith pursuant to the advice given.

3. On the question of whether there was malice in the prosecution of an action by defendant against plaintiffs, testimony that defendant's counsel had declared that he never had any faith in the action is admissible.

4. Malice may be inferred from want of probable cause.

(Opinion filed Jan. 11, 1898.)

Appeal from circuit court, Minnehaha county. Hon. JOS. W. JONES, Judge.

Action for damages for malicious prosecution. Plaintiffs had judgment and defendant appeals. Affirmed.

The facts are stated in the opinion.

*John E. Carland,* (*F. W. M. Cutcheon,* of counsel), for appellants.

Whether the case which a party alleges to have been commenced and prosecuted maliciously be civil or criminal, there must be a concurrence of both malice and want of probable cause, in order that a party may recover damage. Stewart v. Sonneborn, 98 U. S. 194; Sutton v. Johnstone, 1 T. R. 493; Foshay v. Ferguson, 2 Den. 617; Murray v. Long, 1 Wend. 140; Wood v. Weir, 5 B. Mon. 544. If the defendants acted *bona fide* upon legal advice, their defense is perfect. Stewart v. Sonneborn, *supra*; Snow v. Allen, 1 Stark, 502; Raveng v. McIntosh; 2 Barn. &c., 693; Walter v. Sample, 25 Pa. 275; Cooper v. Utterbach, 37 Md. 282,; Olmstead v. Partridge, 10 Gray, 381; Stanton v. Hart, 27 Mich. 539; Perry v. Sulier, 92 Mich. 75; Brewer v. Jacobs, 22 Fed. 222; Emerson v. Cochran, 111 Pa.

St. 619; Allen v. Codman, 139 Mass. 136; Lemay v. Williams, 32 Ark. 166; Cooley on Torts, 183.

*A. B. Kittredge,* for respondents.

"To repel the inference of malice, from want of probable cause, a party may show that he acted under the advice of counsel, and it is a question for the jury whether he acted maliciously." Turner v. Walker, 3 Gill & Johnson, 377; S. C., 22 Am. Dec. 329. Appellants' evidence fails to show that a full and true statement had been made to counsel. Dryfus v. Aul, 45 N. W. 282; Townshend, Slander & Libel, 4th Ed. § 427. See also Brewer v. Jacobs, 22 Fed. 217; Jackson v. Bell, 5 S. D. 257; Sutherland on Damages, § 1240; Wade on Attachment, § 314; 1 Am. & Eng. Encyc. of Law, 2d Ed. 897–907; Brooks v. Bradford Co., 36 Pac. 303; Jonassen v. Kennedy, 58 N. W. 122; Barhight v. Tammany, 28 Atl. 135.

FULLER, J. This action for damages arising from the malicious prosecution of a civil action aided by attachment resulted in a judgment for plaintiffs, from which, and an order overruling a motion for a new trial, the defendant appeals.

It is admitted and stipulated: "That plaintiffs, as copartners, resided and were engaged in business in Sioux Falls, in this state; that defendant is a corporation existing under the laws of New Jersey; that defendant commenced an action in the district court of the state of Minnesota within and for Ramsey county, and attached certain property in that state, belonging to plaintiffs; that when such action was heard judgment was entered therein in favor of plaintiffs; that at various times between the 21st day of October, 1892, and the 9th day of June, 1893, the above-named defendant, at the special instance and request of said plaintiff firm, sold and delivered unto said plaintiffs certain goods, wares, and merchandise, to-wit, tobacco and cigarettes, which were then and there of the value and reasonably worth the sum of two hundred and seven dollars and seventy cents, and for which said plaintiffs then and

there promised to pay said sum of two hundred and seven dollars and seventy cents; that on or about said 21st day of October, 1892, said plaintiffs, by a letter in writing, addressed to defendant, dated at and written from said Sioux Falls, South Dakota, and thereafter received by said defendant, stated to said defendant as follows: 'At any time our bills are due, draw through Merchants' Bank of this city;' that, in pursuance of said statement so received from said plaintiff, said defendant on or about the 1st day of May, 1893, and after the amount was due and owing by plaintiffs to defendant, drew upon said plaintiffs through the Merchants' Bank of Sioux Falls, South Dakota, for the sum of seventy-two dollars and forty-five cents whereby it requested and required said plaintiffs to pay to the order of said defendant the said sum of seventy-two dollars and forty-five cents, and that said draft duly indorsed by said Merchants' Bank of Sioux Falls, South Dakota, with the request to collect the same, and remit the proceeds thereof to the defendant; that thereafter said defendant, in pursuance of said statement so by it received from said plaintiffs, did again during said month of May, 1893, and after the amount thereof was due and owing by plaintiffs to defendant, draw its draft upon said plaintiffs, through said Merchants Bank of Sioux Falls, South Dakota, for the sum of one hundred and thirty-five dollars and fifty cents, whereby it requested and required said plaintiffs to pay to the order of said defendant the said sum of one hundred thirty-five dollars and fifty cents, and that said draft, duly indorsed by defendant, was then and there sent by said defendant to said Merchants' Bank of Sioux Falls, Sonth Dakota, with a request to collect and remit the proceeds thereof to defendant; that between the 1st of day May 1893, and the 17th day of the same month, each of said drafts was by said Merchants' Bank presented to said plaintiffs, and said plaintiffs paid the same to said Merchants' Bank; that, subsequently to said transaction between said Merchants' Bank and said plaintiffs, said Merchants' Bank became insolvent,

and closed its doors, and said Merchants' Bank has not, nor has any other person, paid said drafts so drawn upon plaintiffs other than as stated therein; and that the action commenced by defendant in the district court of Ramsey county, Minnesota against the above named plaintiffs, and in which an attachment was issued, as set forth in plaintiffs' complaint, was brought for the demand represented by said drafts and the tobacco and cigars herein stated to have been sold to the above-named plaintiffs; that Flandreau, Squires & Cutcheon, defendant's attorneys in the attachment suit. are reputable lawyers, residing at St. Paul, in Ramsey county, Minnesota."

The testimony, so far as essential to a determination of the questions of law presented will be noticed in the opinion.    At the close of all the evidence, defendant moved the court to direct a verdict in its favor, for the reason that the same did not entitle plaintiffs to recover, in this: that the plaintiffs have not shown that the action commenced in Minnesota was commenced with malice, and without probable cause; which motion was denied, and defendant duly excepted.

The court gave the following instruction, to which the defendant duly excepted: "The facts in the case are not disputed.    They are admitted and introduced in evidence here upon a written stipulation of facts between the parties.    So it becomes the duty of the court to declare to the jury whether or not there was a reasonable cause; whether or not, under the facts in this case existing at the time that attachment was brought, the American Tobacco Company had any reasonable grounds to believe that Wuest Brothers were indebted to them. It is a matter of law that the court is bound to declare to the jury; that the court instructs the jury that these facts laid down in evidence here, chiefly in this written stipulation, do not show the presence of any probable cause whatever.    On the contrary, they show, as a matter of law, on these facts the American Tobacco Company had no claim whatever against Wuest Brothers; no ground, in law or in fact, on which to bring

that action in Ramsey county, Minnesota. But that is not enough to establish a cause of action in this case, because, as has been stated in some of these other instructions, if they acted honestly upon the advice of counsel, they might still be excused, because of absence of malice. It is necessary there should have been also malice in the prosecution of that action. The jury, however, are permitted—they have the power—and may, if, in their judgment, it should be done, infer malice from the want of probable cause; that is, they may infer from the fact that the suit was brought, and the claim unfounded in fact and in law, that it was brought maliciously for the purpose of injury; but that is a conclusion, not of law, but of fact, that you may draw or not draw, as you may believe you ought to under all the evidence in this case." It also gave the following, to which defendant duly excepted: "On the question of whether or not the American Tobacco Company brought this suit honestly or maliciously, it is proper for you to consider the evidence of the witness Cutcheon touching the matters that he testifies to; that is, it is the law, if one honestly, relying upon the honesty and justness of his claim, gives all the facts of his proposed cause of action fully to a lawyer, honestly relying upon a lawyer's judgment of the law upon the question, he may bring suit upon such claim, and such advice of counsel will be defense against any subsequent action for malicious prosecution. But he must act honestly in this. He must act in good faith in submission of facts to his lawyer. He must submit all the facts to the lawyer, and it must be in good faith, without any mere pretense of going through the forms of submission. So I leave this jury to determine whether or not, in this case, the American Tobacco Company submitted all the facts touching their supposed claim against Wuest Brothers to a reputable attorney, and whether or not that attorney advised them that they had a cause of action against Wuest Brothers, and whether or not they honestly relied upon that advice in bringing this suit. If they did, then they are not responsible in this action; othewise they would be."

"While, as stated by the court, the question of malice is for the jury to determine from the facts, or infer from want of probable cause, if established, both must concur, and a mere failure to prevail in a suit in no manner tends to show a want of probable cause, although the existence of malice most flagrant stands proved. In this case, however, there is nothing to indicate that the advice of counsel was even sought, or to justify a reasonable inference that appellant honestly believed that its claim against respondents had not been paid in full. If it be true, as alleged and relied upon, that appellant, before instituting the attachment proceeding in a foreign state remote from respondents' place of residence, gave to its attorneys, or either of them, a full and fair statement of the facts, and, upon the advice received, entertained an honest belief that its claim was valid, and that the harsh remedy employed was sustainable, such evidence was peculiarly within its knowledge, or that of its counsel; and, in the absence of anything tending to show such a state of facts, we cannot, upon the entire record, say that the trial court erred in holding, in effect, as a matter of law, that there was no probable cause. Probable cause may be defined as such reasons, supported by facts and circumstances, as will reasonably warrant a cautious and prudent man in the belief that his claim and the legal means resorted to in its enforcement are just, lawful, and proper; and being, like other questions of law and fact, exclusively for the court, when the evidence is undisputed, it cannot, in such cases, properly be sent to the jury. Stewart v. Sonneborn, 98 U. S. 187; Burton v. Railway Co., 33 Minn. 189, 22 N. W. 300; Besson v. Southard, 10 N. Y. 236; Townsh. Sland. & L. (4th Ed.) p. 725; Newell, Mal. Pros. p. 14. From Stone v. Crocker, 24 Pick. 81, we quote: "The judge instructed the jury that the evidence showed a want of probable cause; in other words, that all the facts which all the evidence tended to prove did not amount to a probable cause for the prosecution of the plaintiff. This withdrew nothing from the jury which belonged to them. It

was undoubtedly a virtual decision of this branch of the case,
and the jury could not find for the defendant without rejecting
this instruction.    *   *   *    To have taken the opinion of the
jury whether certain facts amounted to probable cause or not,
would have been to obtain their judgments upon a pure ques-
tion of law, which would have been a manifest dereliction of
duty on the part of the court, an avoidance of the responsibil-
ity which belongs to it, and a confounding of the functions of
judge and jury, which should ever be kept as distinct as possi-
ble.'' Where a defendant, to justify a prosecution appearing
to be malicious, pleads affirmatively and relies upon the advice
of counsel, the means of such justification are wholly within his
knowledge or possession; and, in order to avoid liability upon
that ground alone, he must offer testimony tending to prove
the requsite facts.    After stating that it is not quite clear from
the authorities that the burden of proving the negative aver-
ment—a want of probable cause—is upon the plaintiff, Mr.
Newell, in his treatise on the Law of Malicious Prosecution, at
page 485, concludes that:    ''If the defendant relies upon the
plea of the general issue alone, the burden of proof is upon the
plaintiff; but, if he relies upon a plea of justification, he con-
fesses and avoids the cause of action, and the burden is upon
him to prove his defense by competent evidence.''    In order to
constitute a complete defense, and negative the inference of
malice reasonably arising from the facts and circumstances in
the case, all of which were submitted to the jury under in-
structions most favorable to the defense, it was incumbent upon
the defendant to show specifically that, after making to its
counsel a fair and full disclosure of all material facts ascer-
tained or reasonably ascertainable, it acted in good faith, pur-
suant to the advice given.    When there is no competent evi-
dence tending to show what particular facts and circumstances
were communicated to counsel, or it 'does not affirmatively ap-
pear that a true and complete statement was made and relied
upon, it is not error to refuse to submit the question to the

jury.  Jonasen v. Kennedy (Neb.) 38 N. W. 122.  In Stewart v. Sonneborn, 98 U. S., at page 192, Mr. Justice Strong, speaking for the court, says:  "Notwithstanding what has been said in some decisions of a distinction between actions for criminal prosecutions and civil suits, both classes of cases at the present day require substantially the same essentials."  And in Jackson v. Bell (S. D.) 58 N. W. 674, this court holds that:  "In order to relieve a defendant from liability in an action for malicious prosecution on the ground that he acted on the advice of counsel, it must appear that he made a full and complete statement of all of the facts known to him relevant to the prosecution, and was afterwards advised to institute such prosecution, and that he acted on such advice of counsel in good faith."  The undisputed evidence shows that plaintiffs had been customers of the defendant for years, had always promptly paid their just claims when presented, and were worth, above all debts, liabilities, and exemptions, from $28,000 to $30,000, at the time the defendant, through its attorney, Mr. Cutcheon, who had exclusive charge of the case, and who, for the purpose of procuring the attachment in the state of Minnesota, swore that its cause was just, and that there was danger of losing its claim unless the bills receivable due plaintiffs from non-resident customers were seized and held during the pendency of the action.  This attorney was the only witness sworn upon the trial of this case in defendant's behalf, and his testimony that no adjudicated case was ever presented to the Minnesota court to sustain the attachment or action upon its merits, is undisputed.  As bearing upon the question of malice, the jury had the right to find from the testimony of Mr. Winsor, though controverted, that appellant's reputable and learned counsel, Mr. Cutcheon, had declared "that he never had any faith in the action," and to infer therefrom that prior to the commencement of the suit, in performance of his sworn duty, he "had so informed the American Tobacco Company, or its attorneys from whom he had received the claim against Wuest Brothers."  Malice, or, in

the language of the statute (Comp. Laws, § 6964), "a wish to vex, annoy or injure another person," may be inferred from a want of probable cause; and the facts connected with the institution of this attachment suit, in a distant state, the inevitable and unnecessary impairment of credit thus occasioned to plaintiffs, when considered with the embarrassment, discomfort, and the item of extra expense incident to an appearance and defense so far from home, are abundantly sufficient to sustain the verdict of the jury. The requests of counsel for the defendant, so far as proper, were given, in substance, in the court's charge to the jury, and, as we find nothing in the record for which the case should be reversed, the judgment appealed from is affirmed.